by Corrections Corporation of America. They run some of the prisons in Tennessee. Most of them are run by the state. He sued CCA and four of their employees after he fell down a flight of concrete steps outside while returning from his work assignment. We'd like to begin by asking the court to reverse the district to a new district. I'm going to start by saying that the court has not approved the judge's grant of summary judgment on behalf of all the defendants. We feel that that is inappropriate and improper for essentially two reasons. The court failed to properly apply the summary judgment rules. Rule 56 states that summary judgment is proper when there are no material disputed facts and when the defendant is entitled to judgment as a matter of law. The district judge in this case did not follow the rules by seeing the facts in the light most favorable to Mr. Mitchell. For example, the district judge wrote that he received an abundance of medical care. That's a judgment for the jury, not the judge. He characterized Mr. Mitchell's treatment by CCA and its employees as careless and irresponsible. That's essentially deliberate indifference, but he turned around and found that as a matter of law, the plaintiff had not shown that the defendants had been deliberately indifferent. But isn't there a difference between deliberate indifference and negligence? Absolutely, a big difference. Well, I guess I was thinking that what Judge Campbell was saying was he was making statements acknowledging that there were many instances in which the care was negligent. The opinion is a little confusing. I think that Judge Campbell noted that there were a number of instances of deficient care of some type. He chose The defendant's behavior was careless and irresponsible. And I believe that's saying the same as deliberately indifferent. Perhaps you could see it as saying it was a series of negligent acts. We contend they were deliberate and indifferent acts, and if you look at the older case of, I believe it's the Celeste case, a series of independent substandard acts can be circumstantial evidence that the defendants were deliberately indifferent. And we think we have this here with the failure to provide the medical records a whole series of times. He went to eight specialists. They didn't bring his records to six different specialists. The defendants were informed that his records were not going with him to his doctors. When he got to his doctors, they could neither diagnose nor treat him because he had a back injury and you needed the MRI to see what was wrong with Mr. Mitchell. We think one or two of these instances might in some way be characterized as negligent, but when the defendants were informed repeatedly by Mr. Mitchell, orally and in writing by his father, and ultimately by the oversight division of the Tennessee Department of Corrections called Clinical Services, that Mr. Mitchell was not going to appointments with his records. His doctors were not getting the tests they ordered. On two occasions, Mr. Mitchell was ordered by his doctors that they consider giving him steroid injections for the pain. Both of those recommendations were never followed, and ultimately one of the surgeons at Nashville General recommended that he receive back surgery. This particular surgeon was an orthopedic surgeon. He recommended that he go to a neurosurgeon for this. The defendants denied that this surgery was even recommended for a number of months, and finally Mr. Mitchell was sent to a neurosurgeon for the surgery, but with the record snafus still in place, we believe that they either recklessly or intentionally sent someone else's records to the neurosurgeon who ultimately operated on him. Do you have evidence of that? We have evidence. After the records were sent to the neurosurgeon, we believe that they were incorrect. Mr. Mitchell was proceeding pro se at that point. He filed a motion in district court for injunctive relief to get the surgery. When the defendants appeared, they presented a document. It's either the Exhibit 14 or 15, but it's a note purporting to be from Vanderbilt reacting to whatever films or letters CCA was supposed to have sent to Dr. Nemat. They contended that they sent the MRI that was performed on in February 2010, I believe. Dr. Nemat allegedly looked at that 2010 MRI, made conclusions that were completely different from any other MRI results and also the next MRI. This was the odd man out, the results that Dr. Nemat reported. Once he looked at whatever it was that CCA sent them, he said this man doesn't need surgery. He doesn't have these symptoms that were reported in prior MRIs and the final MRI. So whatever it was that they sent him, they did not produce whatever it was they sent to the district judge for the motion hearing on the injunctive relief. But they did produce a document that is inconsistent with all the other documents from Vanderbilt. It has no heading. It doesn't refer to Mr. Mitchell by name. It doesn't have the signature of Dr. Nemat on it. And all this was reviewed by the district judge. And the district judge found that there was, I believe his quote was, a certain disconnect between the prior MRI records and the report that they had gotten from Dr. Nemat. Do you need to particularize this for each defendant so that how would you say, for instance, that Lindemood or how would you say that Stedman were deliberately indifferent? Or at least there was a genuine issue of material fact that each of them individually was deliberately indifferent? Would you like me to sort of go through them quickly? Well, take whoever you think is the worst and show us why that person was deliberately indifferent. First of all, let me just briefly say that these allegations of deliberate indifference are supported by independent evidence, a multitude of independent evidence. You've got Mr. Mitchell's affidavits. You've got his complaint, of course. You also have the deposition of Angela Stedman, who is the health administrator. We have copious medical records that really tell. What are some of like the best things in those records? What would be like the most favorable parts of the affidavits or the most favorable notes on records? If I may, Your Honor, if I can take each of them as Judge Moore just asked and I'll try to answer your questions. Your orange light is on, so you're going to have like one minute left to do this. So pick your best case and tell us why that person was deliberately indifferent. Angela Stedman, the health administrator, was clearly deliberately indifferent. As statutory and also contractual duties to provide the medical care to plaintiffs such as Mr. Mitchell. She misstated records not only to Mr. Mitchell, to the warden, to clinical services. I'm sorry about that. You can finish just what the worst thing that she did was to misstate his records. When she was asked about her scheduling decisions and whether or not the doctor's visits had been accomplished and whether or not tests had been given, she gave false information not only to my client but to the warden and to clinical services, the investigative arm of TDOC. She flat out gave false information to all of these. And we believe that when you're telling stories about what you've done, that indicates the subjective state of mind that it's necessary for deliberate indifference. It indicates a culpable state of mind. She knew that she was doing wrong and had made mistakes. May it please the court, I'm John York and I represent Corrections Corporation of America and the individual defendants that were named in this action. This court should affirm the district court's grant of summary judgment to CCA and the individual defendants because the proof shows that CCA as well as the individual defendants were not deliberately indifferent to Mr. Mitchell's medical care. These cases, deliberate indifference to medical care, usually falls into two categories. The first category where there's a medical condition and essentially no medical services provided whatsoever and then the other category which I would contend that this case falls into where there is medical treatment provided but there's allegations that the treatment was so lacking to... Well it was pretty poor here, wasn't it? It wasn't the best medical treatment provided. Judge Moore, I will agree with that and won't argue against it. However, when we look at the end, at the result, Mr. Mitchell got the treatment that he ultimately was medically required. How many years after? His initial complaint, it was less than three years. He was in excruciating back pain after having fallen down a flight of concrete stairs. Your Honor, he reported to medical with the complaint of falling down the concrete steps. He was given just over-the-counter pain medication. He didn't return to medical for six months after that. So while that period of time... You've got the first six months where you're clear, okay. First six months we're okay on that, I think, Your Honor. And then after that, when he returns to medical, the treatment that's provided to him gets more aggressive as his complaints persist. So your opponent says that the district judge said he was careless and irresponsible. So why isn't there a fact question as to whether some of these defendants, and I'll pick out Stedman and Lindemood, why isn't there a fact question as to whether those two individuals were deliberately indifferent? If the DJ says they were careless and irresponsible... The facts are undisputed in this case. There's some dispute as to the characterization of some of the facts, but as far as what treatment he received, when he received it, what medical providers he was taken to, what dates he was taken to... So your opponent said that Stedman misstated the records, gave false information regarding what she had done, which indicates a culpable state of mind. So the facts are not disputed, you say? That's my opponent's characterization of the facts that are in the record. Mr. Mitchell at one point completed and submitted a grievance. As a health service administrator, Ms. Stedman responded to the grievance. That was forwarded to Warden Lindemood, and Warden Lindemood approved Ms. Stedman's response. There was nothing to show that it was a lie or that there was more than Mr. Mitchell's characterization that it was in this case. So we don't find that there's any factual questions. So did Mitchell characterize this in an evidentiary form, or is it simply a statement in the brief? It's a statement in the brief, Your Honor. He doesn't have affidavits or other kinds of... He did submit an affidavit, and in his affidavit, Mr. Mitchell says a number of things, but they are just simply his opinions as to what transpired in this case. Well, why aren't your people's things just their opinions, and so you have two different sets of opinions? Your Honor, what my clients have done was respond to his grievance, and Mr. Mitchell through his affidavit states that that was a lie. So that's what we're dealing with. My clients aren't coming back saying, no, this wasn't a lie. They're saying this is what was written, this is what Angela Steadman prepared, and this is what the warden reviewed and approved. So hypothetically, let's say that one of the issues is the sending of someone to specialists without MRIs that have been done that are essential to the specialist's diagnosis and regarding treatment. Can the failure to provide the right test information that's already existing, i.e., the MRIs, can that ever become deliberate indifference? I believe in that hypothetical, Your Honor, where you have a prison who is sending a patient, a prisoner, to a specialist, that that in and of itself would defeat any deliberate indifference claim whatsoever. Suppose hypothetically that the specialist says, I can't do anything. I'm an orthopedic surgeon. I can't do anything until I see an MRI. Prisoner, you haven't come with an MRI. Come back to me with an MRI. And suppose hypothetically the prisoner goes back and tells his warden or medical person, you pick whoever, I need to take my MRI next time. And suppose hypothetically the prison sends the prisoner back again without the MRI. If that were done repeatedly, could that show deliberate indifference? I think based strictly on that hypothetical, just if it happens repeatedly, no, that in and of itself wouldn't show deliberate indifference. I think if you add some different facts to that hypothetical, that perhaps we might have a showing of deliberate indifference. So the facts, I suppose, could be that the prison officials send each other notes and say, isn't this funny? We're sending the prisoner to this doctor repeatedly, but we're not sending the MRI. Is that the kind of added facts that we would need? I think so, Your Honor. I think if we had facts where the medical personnel or warden, whoever, says to the prisoner in response to, hey, I'm going back to the specialist. I need to have my MRIs. If a prison official said, well, we don't want you to have effective treatment, so we're not going to send it. Or we don't like you. You know, something. There has to be a smoking gun, essentially, in order for there to be deliberate indifference. I believe in that situation, yes, Your Honor. If the prison officials are sending an inmate out for specialized treatment or for examination by a specialist in the appropriate medical field for that medical condition, as far as negligence goes, that very well might be a claim of negligence. It probably would be a claim of negligence, frankly, Your Honor. But as far as deliberate indifference, no. Do prisoners have the right to make claims of medical negligence against CCA and its doctors? Yes, Your Honor. They do. Mr. Mitchell could have brought a negligence claim against all the parties that were named in this action. Instead, he chose to bring an Eighth Amendment claim. Could he append to his complaint here medical negligence claims and say that there's supplemental jurisdiction? I don't believe that he could, as far as a medical malpractice claim would be concerned. Because you have to comply with various things in the state. Exactly. And as far as the state run-of-the-mill negligence claim, I think that it would have to fall under probably a medical malpractice claim. So I do believe for statute of limitation purposes that he's missed the boat on bringing a negligence action. So do you think there's any difference among the various individual defendants that you're representing? Certainly. In terms of their involvement with deliberate indifference? Yes, Your Honor. If we were to go down the list, starting at the top, we would have the Chief Executive Officer of Corrections Corporation of America, Damon Henninger. The only involvement that Mr. Henninger has in this case whatsoever, as pointed out in plaintiff's brief, is that he was served with this lawsuit. That's it. I mean, he's the Chief Executive Officer, has absolutely no involvement in the day-to-day operations of a particular facility, especially in the day-to-day operations of the delivery of medical care to inmates. So I would submit that he clearly has no personal involvement that could support any sort of liability under Section 1983. I think our next level of defendants would be Warden Linda Mood and Assistant Warden Daniel Pritchard. While both of these individuals are on site of the particular facility that Mr. Mitchell was housed at during all relevant times, these are administrative personnel. They are the administration of the entire operations of the prison. And again, these aren't individuals that have any day-to-day involvement in the delivery of medical care to inmates. The only allegations of any personal involvement concerning either Linda Mood or Pritchard is, as far as Linda Mood is concerned, she did review the grievance that we spoke of earlier and approved the response that Angela Steadman had provided to Mr. Mitchell's that there's another allegation that at some point Mr. Mitchell made a verbal complaint to Assistant Warden Pritchard about his medical care and essentially that Assistant Warden Pritchard blew him off. The plaintiff's characterization is that he didn't take the complaint seriously. Again, those would be the only potential personal involvement and just receiving a complaint like that would not rise to the level to where any liability, assuming that there was a showing of deliberate indifference, could attach to either one of these. Perhaps the most appropriate individual defended in this action would be Angela Steadman as the Health Services Administrator. She was responsible for the day-to-day medical care at the South Central Correctional Facility while Mr. Mitchell was there and was intimately involved with all of the medical decisions in this case. She would be in charge of both records and, for example, getting drugs? She'd been in charge of both? Yes, Your Honor. As far as the organization of the prison would go, all medical services for that facility would be under the supervision of Ms. Steadman. This is actually a question for both of you, just to try to figure something out. The thing that helps you about this case is that the main problem or the central problem is the bureaucratic and snafus. It does suggest more negligence than deliberate indifference. The thing that starts to hurt you is it happened for a long time, so this guy's got serious back pain. He finally, I think, gets the surgery he thinks is right. Yes, Your Honor. I think he's satisfied with the surgery he got, so in the sense of forward, it's good, but the claim is that needlessly had this pain throughout. I'm curious, and again, it's to me that one way of either accentuating the deliberate indifference or undermining the claim is the extent to which he was getting the pain medication in the interim. How much does that help his claim, or how much is it hurting? I think it hurts his claim, Your Honor, in that he was getting medication. He was getting some pain medication. There was at one point where he stopped taking the pain medication because he claimed that it upset his stomach and that he couldn't tolerate it. However, that was made available to him. Another point, which I readily accept that the medical care doesn't look great for CCA in this case, but due to the snafus, the administrative and bureaucratic snafus that occurred. I think it's also important to look at the number of specialists that Mr. Mitchell was taken to over the course of this approximate two-year period before the surgery was ever completed and the varying diagnoses and prognoses that was provided. The first specialist he was taken to recommended a total hip replacement. Another specialist he was taken to recommended that he follow a conservative treatment plan and physical therapy, a medication regimen, and perhaps if that doesn't improve things, then to move on to a surgical intervention. We had another provider who suggested that there should be a consultation with a surgeon. However, that particular doctor, Dr. Limbord, pulled out of the treatment and said, but I can't do it here. We do have the Vanderbilt Clinic in which there was a question of whether the correct records were sent to that provider or not, but what was received back from that provider was, there doesn't appear to be a problem. Let's monitor him. Based on the records that were, according to your opponent, records for a different person that didn't even have Mitchell's name on it. Am I right or wrong? Almost. The record that came back from Vanderbilt is the one that didn't have Mr. Mitchell's name on it. As far as what was sent to Vanderbilt, we contend that we did send the correct records. However, we accept for summary judgment purpose standard that we'll assume and take the light most favorable to Mr. Mitchell, that they were the wrong records. Your point was that there were lots of different opinions from these various doctors, but is part of the reason why there were lots of different opinions because the doctors weren't getting the full records, i.e. the MRIs that had been taken? That could have played a part into it, Your Honor, but I don't think that's the sole cause for there being varying diagnoses from the different doctors. The doctors did have MRIs to review. Each of the doctors examined Mr. Mitchell. Some of the doctors performed their own MRIs. I believe that there were four or five MRIs performed on Mr. Mitchell during this approximate two-year period. That's a lot of MRIs for the doctors to look at. Sounds like some of them had to be performed because of the difficulty in obtaining the earlier ones. I won't disagree with you on that, Judge It would certainly be unusual in a case of this type where there was so much medical attention over a period of time to say there was an issue about whether the defendants were deliberately indifferent. When you look at the fact pattern in this case, as set out in Mr. Mitchell's affidavit, there's a point at which it could be said that the incompetence was so extreme and so repeated that perhaps this is a case in which you could draw an inference of deliberate conduct, deliberate indifference, where you would normally just draw an inference of negligence from inept medical care. Why is that not right? My time is up. Can I respond to that question? Yes. I believe that would be an incorrect thing for this court or any other court to do because that would essentially be counter to the clearly established Eighth Amendment case law with regards to inadequate medical care. Courts don't take the role of second-guessing all the medical decisions that prison officials make. What courts are to do under the Eighth Amendment is look to see, are prison officials providing medical care? It might not be the best medical care. It might not be the most efficient medical care. And at times, it might be medical care that has elements of negligence to it. But that's not what the Eighth Amendment requires. The Eighth Amendment doesn't require that a prisoner receive the best medical care available. The Eighth Amendment provides that prison officials take serious medical complaints and they take action to try to address any medical problems that inmates have. That's what happened in this case. It might have taken a little longer than it should have. It might have been rife with errors and people dropping the balls along the way. But ultimately, that ball was recovered by CCA and they took Mr. Mitchell to the appropriate specialist who performed the appropriate medical procedure. And according to the record, there's been no additional complaints of any medical problems from Mr. Mitchell. Thank you. Thank you. If I may, I'd like to respond quickly to several different points that Mr. York made on behalf of CCA. Just out of curiosity, is there part of the claim that he didn't get pain medication when he needed it? Yes, Your Honor. That is part of the claim. When did that happen and what's the evidence that that was something more than a mistake? I would have to refer you to the medical records because if I answer that, I'm likely to be incorrect. But let me say this. He was ordered, in addition to some of the medication, he was also given muscle relaxers and some steroids at one point that swelled up his head. One of those medications, I believe it was the steroids, upset him and he saw a doctor who recommended at that point a steroid injection. This was the second doctor that But you're saying he asked for pain medication and was not given it? I would refer you to the clinical services report that said that for the first two years he was treated conservatively and this was not effective in managing the pain. I'm not aware of all the ins and outs of the treatment. I believe he was given ibuprofen and some other This is a follow-up to Judge Morris' earlier question to you, but be specific. The records are the big complaint, but where's the time where it's not a mistake? Where's the time where there's evidence that this was more than a mistake? Where the wrong record was sent or the record wasn't sent in time for the appointment? What's the evidence that it was more than a mistake? You have eight visits with specialists, six of them without the MRIs. I think that's a little more than a coincidence or a series of mistakes, considering that the CCA was informed every time that the records were missing. At some point, this isn't just incompetence or inefficiency. It becomes so reckless as to be deliberate indifference. It doesn't have to be intentional, but it's got to be at least reckless, and we argue that this was. Was it the third or the fourth missing MRI? I can't tell you, but definitely I can tell you by the fifth visit that it was reckless. A couple of other quick points I'd like to make. It is admitted that Mr. Mitchell got the surgery and it was relatively successful, but whether or not the prison ultimately provides the needed treatment is irrelevant to the deliberate indifference claim. We have a recent case that came out of Nashville where it's Villegas v. Metropolitan Government. This was a lady who was shackled while giving birth, and she sued because of being shackled during the birth process. She's allowed to recover even though she had a normal delivery. There was Jones v. Muskegon. He was not treated for three months for colorectal cancer. He can recover for that three months. The fact that he ultimately received the surgery doesn't bar his claim, but on the other hand, the fact that he did ultimately receive the surgery is some evidence of the state of mind with which defendants were operating. Your Honor, I believe that's evidence of the state of mind of the federal magistrate judge who's taken a look at it at this point and wanted to have a look at all these records and get these people in court to see what was going on. So the surgery didn't occur until after the lawsuit was filed? That's correct. And after my client filed an injunctive relief to get surgery. That would certainly cut against using the evidence in the way I suggested, but it also wouldn't totally preclude it. How about the recommendation for surgery? The recommendation for surgery came from Dr. Lindberg in November of 2010. There is some dispute about this, and again, we are talking about a lot of disputed facts here because the subjective state of mind of the warden and the deputy warden and Angela Steadman are all fact-based. And once the jury has enough evidence that these people had knowledge, it's the jury's province to rule on whether they had the subjective intent. So if this particular doctor recommended surgery in the fall of 2010, what did Steadman do in response to that recommendation? She adamantly contended that she characterized it as not recommending surgery. But let's be careful there. Is this the point where it's not recommending not to have it, it's about who does it? Doesn't the person who recommends doing it say that someone else should do it? He did for two reasons. He wanted to get a neurosurgeon and also that hospital was not capable of doing neurosurgery. You're not questioning that doctor's judgment, right? No, sir. This was Dr. Lindberg. And Dr. Lindberg, I wanted to touch briefly on some of his notes. You asked whether Angela Steadman had effectively lied. She was asked by clinical services to provide records. And when she did, she told clinical services that an MRI had been made available for Dr. Lindberg to review. She said the EMT test had been done. And she also said that there was one other thing, the steroid injections. Dr. Lindberg has a report where he states, I last saw Mr. Mitchell in February and requested the EMT. That was never done. I had also requested that his MRI be made available for review. That was never done. Suffice it to say, this gentleman's symptoms have remained the same or gotten worse and we still do not know anything more about why he has them. Those are the doctor's notes. Angela Steadman told clinical services differently when asked by them. And our contention is that, yes, she did lie about it. But it's not just our say so. The doctor reported that clinical services found that none of these things had been done. Thank you very much. Thank you both for the argument. The case will be submitted. Would the clerk call the next case, please?